**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| KATHERINE R. DAUPHIN, | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) Civil Action No. 1:15-cv-149 |
| | ) |
| LOUIS A. JENNINGS AND BEVERLY L. HENNAGER, | ) |
| | ) |
| *Defendants.* | ) |

## MEMORANDUM OPINION

This matter comes before the Court on the Report and Recommendation of Magistrate Judge Buchanan dated February 8, 2017 (the "February 8 Report"), Dkt. No. 286, and the Report and Recommendation of Magistrate Judge Buchanan dated February 15, 2017 (the "February 15 Report") (collectively "Reports"). Dkt. No. 298. Responses or objections to the Reports have been filed by the Plaintiff, Katherine Dauphin; Defendant Louis Jennings; Defendant Beverly Hennager; Interested Party Michael Jennings; and non-party Kathleen Holmes. In addressing the Reports, the Court also rules on Defendant Jennings' Motion to Compel Arbitration, Dkt. No. 282, and Defendant Jennings' Motion for Leave to File a Sur-Reply to Holmes' Response to the Motion to Compel Arbitration. Dkt. No. 325.

Based on a review of the Reports, the objections and responses therewith, and the supporting exhibits, the Court ADOPTS the findings and recommendations of Magistrate Judge

Buchanan. Further, the Court hereby ORDERS that the Motion to Compel Arbitration is

DENIED and the Motion for Leave to File a Sur-Reply is GRANTED.[1]

## I. Background

The history of this case has been thoroughly documented in prior orders. Accordingly,

the Court focuses this factual recitation on the events germane to the Reports.

On May 7, 2015, Kathleen Holmes entered an appearance as attorney of record for Louis

Jennings. Dkt. No. 25. On August 10, 2015, on the eve of a summary judgment hearing in the

matter, the parties reached a settlement agreement (the "Settlement Agreement") through which

a Special Master was appointed to manage the affairs of the Partnership and maximize the value

of the partnership assets through a sale, lease, or combination thereof of Partnership property. At

this time, Hennager was represented by the firm PCT Law Group. The PCT Law Group moved

to withdraw its representation on August 27, 2015, Dkt. No. 65, but Judge Buchanan denied the

motion. Dkt. No. 68. On September 15, 2015, David Fiske was substituted as counsel for

Beverly Hennager and PCT Law Group was discharged. Dkt. No. 71. On October 7, 2015,

Holmes made an emergency motion to withdraw as counsel for Louis Jennings citing ex parte

communications by the Defendant circumventing counsel and issues with his power of attorney

authorization. Dkt. No. 72. Holmes' Motion was denied. Dkt. No. 75. On April 7, 2016,

Holmes moved again to withdraw. Dkt. No. 97. Holmes averred that since her first motion she

had proceeded in good faith "to carry out the representation of Mr. Jennings and the directives of

the Special Master" but despite the Court's order "that the presence of counsel is beneficial to

these civil proceedings" the relationship between Holmes and Louis Jennings was so deteriorated

---

[1] Defendant Jennings filed the Sur-reply with the Motion for Leave. The Court has reviewed the Sur-reply and incorporated it into the Court's findings.

that her client no longer authorized her to act on his behalf. Dkt. No. 98. The second Motion was also denied. Dkt. No. 159.

At the same time that Louis Jennings was refusing to cooperate with his counsel, Hennager was feuding with her own counsel. As a result, both Defendants began filing *pro se* pleadings and refused to let their counsel communicate on their behalf. Nevertheless, the Special Master continued to make use of the services of counsel for each of the partners in the furtherance of his orders under the Settlement Agreement. Through these efforts, the Special Master made numerous reports and recommendations to the Court that led to the Court adopting the sale of three parcels of the Partnership property on December 13, 2016. Dkt. No. 226. Ultimately, Fiske was permitted to withdraw as counsel for Hennager on September 13, 2016. Dkt. No. 200. Holmes was permitted to withdraw by the Court on January 13, 2017.

Following the sale of the property and at the request of the Special Master, counsel for Michael Jennings as well as Holmes, Fiske, and PCT Law Group, filed charging liens or otherwise moved for attorney's fees. *See* Dkt. Nos. 227, 232, 241. The Court asked Judge Buchanan to author a report and recommendation concerning the fee requests. Judge Buchanan issued two reports.

The Court takes notice of the following recommendations by Judge Buchanan from the February 8 Report:

1. The attorney's fees and costs billed by Kathleen Holmes after August 16, 2015 should be deemed not subject to the representation agreement between Holmes and Louis Jennings, and that the arbitration demand should be denied.

2. The Court should alternatively require Louis Jennings to specifically identify those fees and costs he disputes which were incurred prior to August 17, 2015, and the reasons therefore, before those charges are referred for arbitration.

3. $174,471.44 of the Partnership's assets (the full amount of Holmes' charging lien) be retained by the Court pending resolution of these issues.

Dkt. No. 286 at 7-8.

Judge Buchanan made the following further recommendations in the February 15 Report:

4. All of the legal fees incurred by the partners in this dispute following the Settlement Agreement should be regarded as expenses of the Special Master. The fees incurred by Jennings Motor Company, Inc. ("JMC") related to the dispute over the breach of the lease on the DAMN Parcel should be borne by JMC and not the partnership.

5. Holmes should be entitled to $118,893.75 in fees to be paid from the partnership assets prior to distribution. Judge Buchanan also specified that $55,577.69 in additional fees sought by Holmes for services prior to settlement were only subject to arbitration if Defendant Louis Jennings could advance a good faith dispute over the pre-settlement fees.

6. Fiske should be entitled to $90,159.11 in fees to be paid from the partnership assets prior to distribution.

7. PCT Law Group should be entitled to $10,243.05 in fees to be paid from the funds due to Beverly Hennager, individually, as no objection was filed to PCT Law Group's charging lien.

8. The lawyers for the Plaintiff and for Michael Jennings should submit an accounting of their post-settlement legal fees to be paid from the partnership assets.[2]

The following responses or objections have been filed to the Reports and Recommendations.

## A. Michael Jennings' Response

Michael Jennings contends that if the Court is to treat the various partners' fees as part of the expenses incurred by the Special Master then either: each of the partners should bear the fees for his or her own attorney because each partner bore similar fees pursuant to the adept division of the work among all counsel by the Special Master; or Michael Jennings should be permitted to submit his fees incurred in assisting the Special Master to be paid as an administrative expense of the Special Master and, by extension, the partnership.

## B. Plaintiff's Response

Plaintiff objects that a substantial portion of Defendants' post-settlement attorneys' fees and costs were not incurred in support of the Special Master. Rather, the majority of the fees were expended in the defense of claims against Defendants and the prosecution of their claims against the Partnership's tenants. Plaintiff expressed a willingness to waive this objection if Plaintiff's post-settlement attorney's fees and costs are treated in the same manner as the Defendants and all parties waive any objection or appeal to the Partnership's payment of Plaintiff's fees and costs.[3]

## C. Defendants' Response

---

[2] These fee requests will be addressed in a separate Report and Recommendation.

[3] Plaintiff also objects that she is unable to scrutinize the billing entries for Holmes because they were originally produced to the Court *in camera*. The fees have since been produced to all parties but Plaintiff still has not offered any particularized objection to the reasonableness of the fees.

Defendants raise four arguments in their objections to the Reports.[4]  First, Defendant Jennings objects to Judge Buchanan's finding that the attorney's fees and costs billed by Kathleen Holmes after August 16, 2015 are not subject to arbitration.  Specifically, Defendant Jennings contends that Judge Buchanan takes an unduly narrow reading of the arbitration agreement in the engagement letter he signed with Holmes.[5]  Rather, Defendant Jennings maintains that the arbitration clause sweeps broadly to cover "any disputes, claims, or controversies between [Defendant Jennings and Holmes] arising from or relating to [their] attorney-client relationship, the legal services performed, or the fees charged . . . and any other alleged wrongful act or omission."  Defendant argues that the broad clause and federal policy favoring arbitration require the Court to submit the fee issue to arbitration.

Further to his demand for arbitration, Defendant Jennings objects to the finding that the Court should require him to specifically identify those fees and costs he disputes which were incurred prior to August 17, 2015, and the reasons therefore, before those charges are referred for arbitration.  Defendant Jennings argues that his right to invoke arbitration does not depend on whether he has detailed his defenses to the fees—merely disputing the claim is sufficient.  Defendant avers that he does not want to "spread upon the public record the details of [Mr. Jenning's] discontent with the Holmes Law Firm."  Defendant Jennings represents that, if compelled to state the nature of his objections to fees charged for services occurring before August 17, 2015, he would identify "various acts and/or omissions by the Holmes Law Group, with respect to the legal services *after* that period . . . such as to entitle him to a complete set-off

---

[4] Defendants filed their objection to the February 8 Report together, Dkt. No. 311, but filed their objections to the February 15 Report separately and through different counsel. Dkt. Nos. 319, 320.
[5] Defendants jointly object to Judge Buchanan's reading of the arbitration agreement despite the fact that only Defendant Louis Jennings has standing to dispute the arbitration provision. The Court refers to each Defendant individually for challenges particular to that Defendant's former representation even if the objection appears in Defendants' joint filing.

against that sum or more." *See* Dkt. No. 317, at 6; Dkt. No. 320 at ¶ 34. As an alternative to arbitration, Defendant Jennings also offered to submit the fee dispute to mediation by the Virginia State Bar Fee Dispute Resolution Program without prejudice to the dispute on the lien before the Court. Finally, Defendant Jennings notes that if the Court pays post-settlement fees to Holmes those fees should be paid by the Partnership.

Second, Defendants jointly argue that each partner should bear responsibility for their own fees and that no fees should be paid by the partnership. Defendants jointly contend that while the Special Master did have authority to hire professional advisers, he did not represent at the time that he had retained Holmes or any of the other parties' attorneys as professional advisers.

Third, Defendants jointly object to the partnership bearing the fees for Michael Jennings' attorney for any services performed in assistance to the Special Master. Defendants note that Michael Jennings is only a limited partner and is thus not entitled to equal treatment with the general partners. Further, Defendants aver that Michael Jennings' relationship to the other parties is adversarial because he represents a party interested in purchasing the DAMN leasehold held by the partnership and was the adverse party in a derivative suit brought by the partnership.

Fourth, each Defendant raises specific objections to the attorney fee's analysis in the February 15 Report. Those objections are addressed *infra* Part III.D.

### D. Holmes' Response

Holmes argues that the Court should overrule Defendant Jennings' objections to the recommendation that he identify the specific fees and costs they dispute for three reasons. First, Holmes notes that Defendant Jennings has not offered any objection to the pre-settlement fees. Second, Holmes contends that it is disingenuous for Defendant Jennings to claim that he does not

7

want to "spread upon the public record the details" of the dispute between Louis Jennings and Holmes when the Defendants have disparaged their counsel, the Special Master, and the Court in numerous court filings and out of court statements. Third, Defendant Jennings has waived any desire for confidentiality in the arbitration because he has disputed the post-settlement agreement fees assessed by Holmes in his opposition to Kathy Holmes Motion for Attorneys [sic] Fees Lien. Dkt. No. 251.

Holmes also asks the Court to overrule Defendant Jennings' objection to the recommendation that the arbitration demand be denied. Holmes notes that the Special Master sought the use of able counsel to analyze, suggest, and consider everything the Special Master needed to do and how to do it. To that end, Holmes assisted in her capacity as a representative not only of Louis Jennings as an individual but also in his role as a general partner to which Holmes owed a duty to act in the best interests of the partnership. Accordingly, when the Special Master assumed responsibility for the management of the partnership after the Settlement Agreement in August 2015, Holmes, as counsel for a general partner with a duty to the best interests of the partnership, was necessarily aligned with the Special Master.

## II. Legal Standard

When reviewing a Magistrate Judge's Report and Recommendation, the Court must make a *de novo* determination of those portions of the Report and Recommendation to which objections, if any, are made. Fed.R.Civ.P. 72(b); 28 U.S.C. § 636(b)(1)(C). The Court is authorized to accept, reject or modify, in whole or in part, the recommendations made by the Magistrate Judge. Fed.R.Civ.P. 72(b); 28 U.S.C. § 636(b)(1)(C). Where no party has made an objection to a report the Court is not required to give any explanation for adopting the recommendation. *Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983).

8

### III. Analysis

As discussed above, Judge Buchanan made three recommendations in the February 8 Report. First, the February 8 Report recommended that Holmes' post-settlement fees are not subject to arbitration because they fall outside of the scope of her representation of Louis Jennings. Second, Judge Buchanan found that Defendant Jennings should, but had failed to, identify a dispute justifying arbitration of Holmes' pre-settlement fees. Third, the February 8 Report recommended setting aside the amount of Holmes' charging lien from the partnership assets in order to resolve this claim. In addition Judge Buchanan recommended in the February 15 Report that the legal fees incurred by the partners following the Settlement Agreement should be regarded as expenses of the Special Master except for those incurred by JMC; Holmes should be entitled to $118,893.75 in fees to be paid from the partnership assets prior to distribution and $55,577.69 in additional fees to Holmes were only subject to arbitration if Defendant Louis Jennings could advance a good faith dispute over the pre-settlement fees; Fiske should be entitled to $90,159.11 in fees to be paid from the partnership assets prior to distribution; and PCT Law Group should be entitled to $10,243.05 in fees to be paid from the funds due to Beverly Hennager.

Taking into account all of the responses and objections, the Court considers the Reports together and addresses: the arbitration of post-settlement fees; the arbitration of pre-settlement fees; the retention of the amount sought in the Charging Lien; and the reasonableness of the fees sought by Defendants' former counsel.

#### A. Arbitration of Post-Settlement Fees

In the February 8 Report, Judge Buchanan found that the arbitration of Holmes' post-settlement fees was not appropriate in this matter. Further, in the February 15 Report, Judge

9

Buchanan found that all of the work undertaken by counsel for each of the partners post-settlement, with the exception of work undertaken for the benefit of Jennings Motor Company, was in support of the Special Master and should be paid out of the Partnership assets as expenses of the Special Master. The Court addresses these findings and the objections therewith below.

Judge Buchanan was correct in finding that Holmes and counsel for the other parties to this dispute were called upon by the Special Master to provide services in furtherance of the Settlement Agreement. Defendants' objections to this finding are without merit. While Defendant Jennings contends in the joint objection to the February 8 Report that the legal services provided to him after settlement "albeit provided and received involuntarily – were *legal services for Louis Jennings*", Dkt. No. 311, ¶ 7 (emphasis original); this narrow treatment of post-settlement services is belied by Defendant Jennings' representations elsewhere in the record. Defendant Jennings' present counsel avers that Holmes "spent much of [her] time assisting the Special Master in carrying out various activities for the partnership, *rather than representing Louis Jennings*, Dkt. No. 282, ¶ 2 (emphasis added). Louis Jennings, acting *pro se*, also denied that Holmes was acting pursuant to the retainer agreement. *See* Dkt. No. 251 at 4 ("Holmes agreed to violate the retainer agreement with her client by working for the Master at her expense."). Similarly, Defendants' joint observation that the Special Master did not expressly designate Holmes or the other counsel to the partners as "professional advisors" pursuant to the settlement agreement unreasonably elevates form over function. In practice, the Special Master compelled the assistance of the counsel for the parties to expediently dispose of the partnership property after determining that doing so would maximize the value of the partnership assets. As Holmes points out, she had a duty to represent the best interests of Louis Jennings and the partnership at the same time.   Thus, when Holmes acted in service of the

Special Master she was, by extension, acting in the best interests of the partnership. The same is true of all of the general partners' counsel at the time of the Settlement Agreement in relation to the partnership and their clients.

There also can be no dispute that Louis Jennings sought to terminate his relationship with Holmes after settlement. *See* Dkt. Nos. 72, 97. However, the Court affirmed the Special Master's determination that keeping the present counsel was consistent with the goals set forth in the Settlement Agreement to expediently act to maximize the value of the property. Dkt. No. 162 at 28:11-29:5. The Reports carefully balance the need to account for the contributions made by counsel in service of the Special Master with Louis Jennings' desire to discharge his counsel. Rather than hold Louis Jennings solely responsible for the fees incurred after settlement, those fees are drawn from the partnership funds generated by the effective disposition of the property. Thus, each partner bears a share of the work provided for the Special Master, relative to their ownership stake in the partnership. However, work done on behalf of a client rather than at the behest of the Special Master is not entitled to this equitable treatment. Those services are better captured by the contractual engagements between counsel and their clients. Because this finding extends to all of the parties to the extent that their counsel served at the request of the special master, it addresses the objections raised by Michael Jennings and Plaintiff.

Because the Report found that all but a *de minimis* amount of Holmes' post-settlement fees were for the benefit of the Special Master and Defendant Jennings has represented that the time was spent representing the Special Master as opposed to Louis Jennings, it was reasonable for Judge Buchanan to find that Holmes' post-settlement services were outside of the scope of the original engagement. Because the Report correctly found that the legal services provided

post-settlement fell outside of the scope of the engagement letter between Louis Jennings and Holmes, those services are not subject to the arbitration clause in the engagement letter.

The same conclusion that Judge Buchanan reached in the February 8 Report with respect to Holmes' post-settlement legal fees was correctly and equally applied to the other partners' legal fees in the February 15 Report. The lawyers for the partners had their time divided between two tasks post-settlement—both in service of the Special Master. First, they were called upon to assist with maximizing the value of the property by among other things, zoning considerations that may bear on the value of the property, as well as facilitating communication between the Special Master and the partners respecting offers for sale or lease and sundry requests of the Special Master. Second, the Settlement Agreement expressly provided for the Special Master to determine whether a former tenant was liable for a breach of the lease agreement or whether any funds must be repaid by a party to the partnership. Dkt. No. 133, Exh. A, ¶ 3. Thus, any hours devoted by the attorneys for the partners to either of these endeavors constituted legal services which were undertaken at the behest of the Special Master pursuant to the Settlement Agreement. Accordingly these services were "necessary to the administration of duties" of the Special Master and are payable by partnership funds. Dkt. No. 133, Exh. A, ¶ 9.

These services are also readily contrasted with the truly adversarial legal filings made by the Defendants *pro se* during the time which they were represented by their counsel but refused to cooperate with them. Whereas Holmes and Fiske prepared zealous pieces of advocacy in furtherance of the Special Master's accounting of the partnership assets, Defendants filed *pro se*, among other things, a motion to stay all proceedings, Dkt. No. 201; a motion to recuse the undersigned and void all orders and judgments of the Court, Dkt. No. 220; a motion to invalidate the 1994 amendments to the Partnership Agreement, Dkt. No. 243; and a motion to void the case

and all orders of the Court for abuse of process, Dkt. No. 246. Through these motions, Defendants attempted to undo the entire operation of the Settlement Agreement in opposition to the efforts of the partnership through the Special Master. The work by Holmes and Fiske, which was undertaken to maximize the value of the partnership assets, was of a different kind from these adversarial filings made by the Defendants once they had suppressed or disposed of their counsel.

For the foregoing reasons, the Court adopts the findings of the Reports with respect to the arbitration of post-settlement fees.

### B. Arbitration of Pre-Settlement Fees

As the Report notes, Louis Jennings did not object to any of the fees and costs for services provided prior to the August 10, 2015 Settlement Agreement until February 2017. In light of the eighteen-month delay and the Defendants' long history of engaging in dilatory tactics to obstruct the work of the Special Master and overturn the Settlement Agreement, it was reasonable for Judge Buchanan to request specific identification of objections to the pre-settlement fees and prevent Defendant Jennings from maintaining a claim lacking a basis in law or fact. The closest Defendant Jennings has come to answering Judge Buchanan's request is to represent that objectionable acts or omissions which occurred *after* settlement entitle him to a set-off against the fees incurred prior to settlement. Dkt. No. 320, ¶ 34; Dkt. No. 317 at 6. Because the Court adopts the findings of the Report with respect to the post-settlement fees, it must reject the request to rely on post-settlement objections as a set-off against pre-settlement services. Accordingly, Defendant Jennings has not complied with Judge Buchanan's request to present a good-faith basis for objecting to the pre-settlement fees.

Defendant Jennings nevertheless contends that the matter should go to arbitration because he cannot present a complete list of objections to Holmes' services at this time. Rather, "Louis Jennings will be using counsel specializing in these matters to press his concerns." Dkt. No. 325, Exh. 2. This change of counsel does not justify Defendant Jennings' failure to meet Judge Buchanan's request. Present counsel is very experienced and more than capable of providing some colorable representation as to the nature of the objections to the pre-settlement services. Defense counsel's February 28, 2017 letter to Holmes' law firm makes abundantly clear that present counsel is capable of articulating objections to the fee demand and the letter is further evidence that no legitimate dispute exists over the pre-settlement fees. *See* Dkt. No. 325, Exh. 2.

Holmes' fees for services prior to settlement are long overdue. Defendant Jennings never objected to Holmes' bills until the post-settlement fallout and he does not presently have an objection to the pre-settlement fees. While the arbitration provision in the engagement letter between Holmes and Louis Jennings is broad, it nevertheless requires "a dispute, claim, or controversy." Dkt. No. 269, Exh. 1 at 9. Because no such controversy exists over the pre-settlement fees, the findings of the Report are appropriate and the arbitration demand is denied.

### C. Retention of the Amount Sought in the Holmes Charging Lien

The parties do not object to the finding of the Report that $174,471.44 should be retained by the Court pending resolution of the attorney fee issue. Accordingly, the Court adopts this finding.

### D. Reasonableness of Fee Requests

The Court now turns to review Judge Buchanan's analysis of the specific fee requests made in this case. Consistent with Fourth Circuit precedent, Judge Buchanan conducted a "lodestar" analysis by multiplying the number of reasonable hours expended times a reasonable

14

rate. *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013) (quoting *Robinson v. Equifax Info.*

*Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009). In determining what is reasonable, Judge

Buchanan considered each of the twelve factors enumerated in *Johnson v. Georgia Highway*

*Express Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974); *see also Barber v. Kimbrell's, Inc.*, 577 F.2d

216, 226 n.28 (4th Cir. 1978).

The Court reviews Judge Buchanan's findings with respect to each of these factors,

noting and discussing the parties' objections in each case.

### 1. Time and Labor Expended

Judge Buchanan found that Defendants had made no specific objections to the time

expended and hourly rates for Holmes or Fiske. Rather, Defendants had only made the general

objection that they no longer desired representation from Holmes or Fiske after settlement and

they did not authorize their attorneys to perform work for the benefit of the Special Master.

Judge Buchanan determined that the entries of time expended by Holmes and Fiske were

necessary to the work of the Special Master and did not exceed time that the Court would

reasonably expect to be spent on such matters.

In response to the February 15 Report, Defendants object to the finding that the time and

labor expended by counsel was reasonable. Defendants contend that the use of lawyers with

duties of loyalty to their respective clients, each charging substantial hourly rates, was not an

efficient way to carry out administrative tasks. Further each Defendant, with respect to their

representation, contends that the fee disputes should not be resolved via the Reports but rather,

each Defendant should have the opportunity to assert legal and equitable affirmative defenses,

counterclaims (including legal malpractice), and object to the reasonableness and necessity of the

fees claimed—and to have all of these issues decided by a jury trial.

As discussed above, the Court agrees with the findings in the Reports that the lawyers for the partners were acting in the service of the Special Master following the Settlement Agreement. Further, as Holmes points out "each general partner continued to owe his or her highest fiduciary duty to the partnership and as such, was necessarily aligned with the Special Master and the stated intentions of the partners under the settlement agreement." Dkt. No. 321, ¶ 3. Thus, to the extent that counsel had a conflicting duty of loyalty, that conflict was endemic to the dual role of the parties as partners and as individuals. This purported conflict would not be cured by different counsel.

The Court also declines to reject the Reports over Defendants' assertion that they are entitled to a full jury trial over the award of attorney's fees. The Supreme Court has repeatedly stated that "an application for attorney's fees should not result in a second major litigation." *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1988 (2016). Furthermore, the Court has provided more than adequate measures for a full adjudication of the fees issues in this matter. The Court properly authorized the Magistrate Judge to review the record and submit proposed findings of fact and recommendations for disposition. 28 U.S.C. § 636(b)(1)(B). All parties were permitted to, and Defendants have, submitted objections to those findings. On February 23, 2017 Judge Buchanan instructed Holmes and Fiske to distribute a statement of fees and costs to all counsel of record. Dkt. No. 313. Both attorneys complied the same day. Dkt. Nos. 314, 316. Objections on the February 15 Report which dealt with the substance of these fee statements were not due until March 1, 2017 and Defendants did not file their objections until that date. Dkt. Nos. 319, 320. Further, the pre-settlement fees had already been invoiced to the Defendants during the pendency of this matter. Thus, Defendants had a reasonable opportunity to challenge the specific fee demands as unreasonable or excessive but failed to so. Notably, despite alleging

16

that the lawyers billed unreasonably for administrative tasks neither Defendant pointed to any "administrative tasks" in the billing records.

Judge Buchanan found that the time and labor was appropriate for the identified tasks. After reviewing the billing records, the Court agrees with this finding. Consequently, the Court will not reject the Reports in favor of separate attorneys' fees litigation.

### 2. Novelty and Difficulty of the Questions Raised and (3.) Skill Required to Properly Perform the Legal Services Rendered

Judge Buchanan combined the second and third factors and found that this case was "complicated and somewhat unique" which warranted the rates charged by Holmes and Fiske. Dkt. No. 298 at 9. The February 15 Report bifurcates former counsels' representation into two categories, (1) preparation for a hearing regarding alleged violations of the lease before the Special Master, and (2) assisting the Special Master in assessing the fair market value for the properties, the zoning and future development potential of the properties, and offers made by third parties for the properties. Judge Buchanan notes that these matters required experienced and knowledgeable counsel in part because they were time sensitive—the Special Master and the Court were under the impression that certain zoning allowances would expire if a buyer or tenant was not promptly secured for the property.

With these considerations in mind, Judge Buchanan found that Holmes and Fiske were ably qualified and well-matched to the challenges presented by this matter. Judge Buchanan noted that Holmes has over 20 years of experience as an attorney focused on business disputes and management and Fiske has over 40 years of experience in commercial litigation. Both lawyers are regular practitioners before the Court. Their expertise with the Court, the general subject matter of commercial litigation, and the specifics of this case, enabled them to

"significantly contribute[] to the ability of the Special Master to negotiate successful, highly profitable contracts for the properties." Dkt. No. 298 at 11.

No party has objected to this finding in the February 15 Report. The Court adopts Judge Buchanan's finding on this factor.

### 4. The Attorneys' Opportunity Costs in Pressing the Instant Litigation

Concerning the opportunity costs in the instant proceedings, Judge Buchanan noted that Holmes and Fiske's considerable time on this matter was further increased by the need to deal with the conflict posed by their clients demands to withdraw—time which the attorneys could have spent assisting other clients. Further, Judge Buchanan noted that neither attorney has been paid any amount beyond their initial retainers when they joined this matter in 2015.

No party has objected to this finding in the February 15 Report. The Court adopts Judge Buchanan's finding on this factor.

### 5. The Customary Fee for Like Work

Judge Buchanan found that the fees assessed in this case were customary for like work. First, Judge Buchanan noted that the Defendants agreed to the fees as part of the retainer agreements they signed with counsel at the time of engagement. Second, Judge Buchanan found that the fees were within the range of customary fees found acceptable in *Vienna Metro LLC v. Pulte Home Corp.*, No. 1:10CV502 (E.D. Va. Aug. 24, 2011).

Except for the generalized objections discussed and rejected above, no party has objected to this finding in the February 15 Report. The Court adopts Judge Buchanan's finding on this factor.

### 6. The Attorneys' Expectations at the Outset of the Litigation

Judge Buchanan found that neither Holmes nor Fiske could have anticipated the course of this litigation at its outset or that they would be compelled to remain as attorneys of record in the matter for the benefit of the Special Master despite their clients' demand for their withdrawal.

No party has objected to this finding in the February 15 Report. The Court adopts Judge Buchanan's finding on this factor.

### 7. Time Limitations Imposed by the Client or Circumstances

With respect to the time limitations in this case, Judge Buchanan found in the February 8 Report that it was necessary that all parties be represented by counsel in order for the Special Master to effectively exercise his duties under the Settlement Agreement. To that end, existing counsel was the most cost-effective option because of their familiarity with the details of the matter. Further, time was of the essence because of the Court's understanding that zoning rights for the properties which may bear on the highest and best use of the property were set to expire if a new tenant or owner was not obtained promptly. Accordingly, Judge Buchanan found that Holmes and Fiske ably assisted the Special Master particularly in light of the trying circumstances.

Defendants jointly object that the property was never going to lose its zoning status and that accordingly there was no need to rush to complete a sale and that the highest value of the property would have instead been achieved by waiting until more desirable circumstances developed. *See* Dkt. No. 293, at 12:1-13:6, 41:4-42:24. Defendant Hennager cites to a statement from the Fairfax County Supervisor Jeff McKay that he hoped to redevelop the Springfield area encompassing the Partnership properties such that the highest use of the property would be mixed commercial and upscale residential. Dkt. No. 319, ¶ 68; Dkt. No. 320, ¶ 77.

These objections are controverted by the evidence taken by the Court in its review of the sale of three of the Partnership property parcels. During the September 23, 2016 hearing in this matter the Court took testimony from John Ryan, the commercial real estate broker retained by the Special Master to market the Partnership properties. Mr. Ryan testified that he considered options to rezone the property but that there was limited interest despite the expressed desire of the County Supervisor to redevelop the area. Dkt. No. 293, 10:25–13:6. Therefore, even if rezoning and redevelopment were possible, it was Mr. Ryan's professional opinion that auto-related use remained the best option and that this industry was currently in a peak period when they would pay the highest value for property. *Id.* Thus, the need to act expediently was not only supported by the risk that the zoning for auto-related uses could expire but was also based on the market interest in the property and the circumstances of the auto-sales market. The Court considered all of these facts when it authorized the sale of the D, E, and F parcels of the Partnership property and these same considerations support the time limitations condition in the fee award analysis.

### 8. Amount in Controversy and Results Obtained

The underlying dispute in this matter arose out of Plaintiff's complaint that the partners were unable to make decisions for the partnership which led to the need for dissolution and the sale or lease of the Partnership property to pay for the debts and taxes due. As Judge Buchanan noted, had the parties not settled the dispute, dissolution would have followed and the properties would have sold for substantially less than market value. The February 15 Report found that the efforts of the Special Master, by and through counsel for the parties including Holmes and Fiske, resulted in an orderly competitive bidding process for the properties from which higher value was obtained than would have been possible in a forced dissolution sale.

Defendants separately object to the finding that but for the Settlement Agreement the Partnership would have been forced into a fire sale by dissolution or by foreclosure on the properties for tax arrears.  Defendant Hennager contends that such a factual finding was never made because the parties instead entered into the Settlement Agreement which suggested winding up the Partnership's affairs as one of several possible resolutions to the issues raised in the Complaint.  On this basis, Defendant Hennager claims that the results obtained were not advantageous because the unfavorable outcomes identified in the Reports were "never reasonably likely to have come to fruition."  Dkt. No. 319, ¶ 7.

Defendant Hennager is correct that the Settlement Agreement did not limit the Special Master to a sale of assets and wind-up of the Partnership.  Rather, it instructed the Special Master to identify, as expeditiously as possible, how to maximize the value of the partnership assets including through a lease, sale, or combination thereof.  Dkt. No. 133, Exh. A, ¶ 2.  Thus a result which maximizes value and is a sale, lease, or a combination thereof, constitutes a favorable outcome.  The Special Master did obtain a sale of the D, E, and F parcels and the Court found that this sale maximized the value.  Dkt. No. 217.  Therefore, a favorable outcome was obtained.  The Court need not make a factual determination that a dissolution or tax foreclosure was likely to occur in order to conclude that such a result would be less favorable than the outcome which the Special Master obtained.  Accordingly, Defendants' objections are without merit and the Court adopts the findings of the February 15 Report on this factor.

### 9. Experience, Reputation, and Ability of the Attorney

With respect to the ninth factor, Judge Buchanan incorporated the same observations made in factors two and three respecting the high reputation and ability of Holmes and Fiske.  As

discussed above, no party has objected to this finding in the February 15 Report. The Court adopts Judge Buchanan's finding on this factor.

### 10. Undesirability of the Case within the Legal Community

Judge Buchanan found that this case was highly undesirable within the legal community because Defendants have repeatedly submitted unjustified and unfounded complaints to the Court either *pro se* (even while they had retained attorneys) or through counsel. Further, Judge Buchanan pointed out that Holmes and Fiske's motions to withdraw as counsel were denied, in part, until replacement counsel could be secured and that Defendants' inability to obtain replacement counsel is telling of the undesirability of this representation. No party has objected to this finding in the February 15 Report. The Court adopts Judge Buchanan's finding on this factor.

### 11. Nature and Length of the Professional Relationship between Attorney and Client

Judge Buchanan found that the eleventh factor was not significant in this matter. No party has raised an objection to this finding and the Court adopts Judge Buchanan's finding on this factor.

### 12. Attorney's Fees Awarded in Similar Cases

Judge Buchanan found that this case was sufficiently complex that there were no similar cases from which to draw comparisons. Nevertheless, Judge Buchanan observed that the fees requested by Holmes and Fiske amount to no more than 1.6% of the gross proceeds of the sale of the Partnership properties. As discussed above, the properties were sold for higher amounts because of the efforts of counsel in the service of the Special Master. Accordingly, the fee awards are reasonable. No party has objected to this finding in the February 15 Report. The Court adopts Judge Buchanan's finding on this factor.

## IV. Conclusion

For the reasons stated above, the Court hereby ADOPTS the February 8 Report and

Recommendation of Magistrate Judge Buchanan, Dkt. No. 286, and ADOPTS the February 15

Report and Recommendation.  Dkt. No. 296.  It is further ORDERED that Defendants' Motion

to Compel Arbitration, Dkt. No. 282, is DENIED; Defendants' Motion for Leave to File a Sur-

Reply is GRANTED.  Dkt. No. 325.


March 27, 2017                              /s/
Alexandria, VA                     Liam O'Grady
                                   United States District Judge