IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| KATHERINE R. DAUPHIN,<br><br>              *Plaintiff*,<br><br>v.<br><br>LOUIS A. JENNINGS AND BEVERLY L. HENNAGER,<br><br>              *Defendants*. | Civil Action No. 1:15-cv-149 |

**MEMORANDUM OPINION**

This matter comes before the Court on Defendants Louis Jennings and Beverly Hennager's Motion for Stay of Action on the Proposed Assignment of the DAMN Lease Pending Hearing. Dkt. No. 287. The Court conducted a hearing on the Motion on March 10, 2017 during which John Ryan, representative of CBRE, engaged by the Special Master to sell the leasehold, provided testimony on the process of achieving the maximum value of the DAMN Leasehold to the Kay Jennings Family Limited Partnership. For the reasons discussed below, Defendants' Motion is hereby DENIED. The Court authorizes the Special Master to enter into the assignment agreement with DAMN, LLC as of today's date.

**I. Background[1]**

The judicially-administered distribution of property in this matter arises out of Plaintiff Kathleen Dauphin's Complaint filed on December 31, 2014 in the Circuit Court of Fairfax, Virginia seeking dissolution of the partnership, of which Plaintiff and Defendants are general and

---

[1] In the interest of clarity, the Court notes an immaterial error in its recent memorandum opinion adopting the Reports and Recommendations of Magistrate Judge Buchanan. Dkt. No. 341. The opinion noted that "[Kathleen] Holmes was permitted to withdraw [as attorney for Louis Jennings] by the Court on January 13, 2017." *Id.* at 3. Her withdrawal was actually approved by the Court on July 22, 2016. Dkt. No. 161.

limited partners. Dkt. No. 1, Exh. A; Dkt. No. 181. Michael Jennings, an interested party in the litigation is also a limited partner in the partnership. Defendants removed the case to this Court. Dkt. No. 1. On August 10, 2015, the parties entered into a settlement agreement whereby a Special Master, the Honorable Paul Sheridan, was appointed to, among other things, obtain a valuation of the partnership property, account for money due to the partnership, and investigate the best course of action to maximize the value of the partnership assets. Dkt. No. 133, Exh. 1; Dkt. No. 67. Pursuant to that authority, on April 7, 2016, the Special Master retained John Ryan of CBRE, a commercial real estate firm, to market the partnership real estate holdings for sale or lease. The Special Master also retained JMSP, Inc. to conduct an appraisal of the properties. The appraisal was issued on December 7, 2015.

On August 29, 2016, after considering multiple reports from the Special Master and taking testimony from John Ryan, the Court approved the sale of three parcels of partnership property (the "D, E, & F" parcels). Dkt. No. 217. In the same order, the Court instructed the Special Master and CBRE to continue accepting and considering offers for the remaining partnership property asset, a long-term lease on the DAMN Property. *Id.*

The complicated ownership structure of the Leasehold and the underlying DAMN Property complicated marketing efforts. Michael Jennings owns 40% of the DAMN Leasehold and each of the general partners (the plaintiff and the two defendants) own 20%. The DAMN Property, which is subject to the Leasehold, is held entirely by DAMN, LLC, a corporation owned by Michael Jennings. Put simply, Michael Jennings has an ownership stake in the Leasehold and the Property. He was not obligated to sell the DAMN Property pursuant to the settlement agreement. Nevertheless, Michael Jennings expressed a willingness to sell the DAMN Property in conjunction with a sale of the DAMN Leasehold and he retained CBRE to

market the DAMN Property for sale during the same time that the DAMN Leasehold was advertised by CBRE acting on behalf of the partnership.

The Defendants expressed a strong desire to purchase the DAMN Leasehold. The Court held that the Defendants were permitted to submit an offer but their doing so did not exclude the Special Master from soliciting and considering additional bids. Dkt. No. 281. Defendants submitted an offer which was initially recommended by CBRE and the Special Master. *See* Special Master's Status Report dated December 22, 2016. Ultimately, the agreement was deemed not acceptable by CBRE and the Special Master for reasons discussed *infra*. After considering numerous additional offers, CBRE advised the Special Master that the maximum value of the DAMN Leasehold would be achieved by assigning the leasehold to DAMN, LLC. Upon review, the Special Master accepted CBRE's findings, negotiated the terms of a proposed assignment of the lease and advised the Court via email on February 10, 2017 that it should authorize a transfer of the DAMN Leasehold to DAMN, LLC for an agreed upon value of $2.4 million.

Defendants moved to stay action on the Special Master's proposed assignment. Dkt. No. 288. Defendants object that the proposed transaction violates the partnership agreement and the value of the transaction is less than the amount set forth in the real estate appraisal. *Id.* at ¶ 3. DAMN, LLC, as an interested party, filed an objection to the stay. Dkt. No. 294. By letter to CBRE, Defendants requested the production of certain communications by CBRE and documents the firm relied upon in recommending the transaction with DAMN, LLC. The Court permitted the release of this documentation, Dkt. No. 297, after which Defendants submitted "Objections to Proposed Assignment" which identified additional grounds upon which Defendants believed that the stay should be granted. Dkt. No. 334. The Court conducted a

hearing in this matter on March 10, 2017. Dkt. No. 336. During the hearing, the Court elicited testimony from John Ryan as to the process by which he recommended the transaction with DAMN, LLC. *Id.* In response to issues left unresolved during the hearing, the Special Master issued a report dated March 22, 2017 and distributed the report to the parties via email.[2] The Special Master also distributed to the parties a report by CBRE describing the process of marketing the DAMN Leasehold in further detail.[3]

## II. Legal Standard

The settlement agreement authorizes the Special Master to obtain "a valuation of all property of the partnership by independent appraisal(s) . . . [and] recommend[] to the court as expeditiously as possible, as to how to maximize the value of the partnership assets[.]" Dkt. No. 133, Exh. 1, ¶¶ 1-2. "Sale or other disposition of the property must be approved by the Court." *Id.* at ¶ 5.

## III. Discussion

In rendering its findings on the Motion and the transfer of the Partnership Leasehold to DAMN, LLC, the Court considers the Motion, objections thereto, the testimony of Mr. Ryan, his email correspondence relating to the transaction,[4] and the reports of the Special Master and CBRE. Based on this evidence, the Court finds that the proposed transaction does not violate the partnership agreement, maximizes the value of the asset for the partnership, and that Defendants' remaining objections are without merit. These findings are detailed below.

---

[2] A redacted copy of this Report is attached to the Order as Exh. 1.
[3] A redacted copy of this Report is attached to the Order as Exh. 2.
[4] The email correspondence was produced pursuant to a request by the Defendants and was made available to all parties prior to the March 10 hearing.

A. Application of the Partnership Agreement to the Assignment

Defendants contend that the assignment of the lease to DAMN, LLC violates the partnership agreement because the transaction entails an assignment of a limited partner's interest in the partnership without satisfying the requirements of Section 9 of the agreement. Section 9 requires that any limited partner's offer to sell their interest in an asset must first "ha[ve] been offered to the Partnership and Partners" and if the transaction results in a substitute limited partner the General Partner must consent to such substitution. Dkt. No. 1, Exh. A at 23-25. If the offer for the interest is made in cash, "the Partnership shall have an option . . . to purchase all but not less than all of the partnership interest" within thirty days of the proposed sale. *See* Dkt. No. 1, Exh. A at 28. Defendants aver that proposed transaction will transfer Michael Jennings limited partnership interest but the Defendants, as general partners, have never been offered a right of first refusal nor have they consented to the restructuring as required by Section 9.

Interested Party DAMN, LLC objects that the assignment does not contain an assignment of Michael Jennings' partnership interest and therefore does not require compliance with Section 9 of the partnership agreement. Rather, DAMN, LLC contends that "Michael [Jennings] is assigning his share of the proceeds of the lease purchase to the Purchaser. Put another way, the Purchaser [DAMN, LLC] is paying $2,400,000 for the leasehold. Michael is assigning his share of the proceeds (40%, or $960,000) as a credit to the Purchaser." Dkt. No. 292 at 5. While Section 9 prohibits restrictions on the assignment of a "limited partnership interest" it places no limitation on the assignment of rights to distributions. Accordingly, DAMN, LLC contends that the assignment does not trigger Section 9.

The Court agrees with DAMN, LLC's argument. There is a material difference between the assignment of a partnership interest in an asset which the partnership will continue to own after the transaction and a transaction liquidating the partnership asset for which all partners receive a disbursement. In the former case, the other partners' rights of first refusal and to veto the transaction are appropriate to prevent the remaining partners from being forced to co-own property with a hostile non-partner. In the latter case, the partnership does not retain the asset so there is no risk that the partners will be forced to co-own the asset with a non-partner. Because the partnership is not retaining any interest in the DAMN Leasehold, Section 9's protection of partner *interests* in property does not apply. Accordingly, the Court dismisses this objection to the assignment of the DAMN Leasehold.

### B. Maximum Value of the Asset

Defendants contend that the assignment of the DAMN Leasehold should be stayed because the proposed assignment does not maximize the value of the asset to the partnership. The assignment is based on an "agreed upon" value of $2.4 million which Defendants aver is "hundreds of thousands of dollars less than the appraised value of the leasehold interest as set forth in the December 2015 real estate appraisal conducted by the firm retained by the Special Master." Dkt. No. 288, ¶ 3.

DAMN, LLC counters that the evidence presented to the Court and the judgment of the Special Master and CBRE support a finding that the proposed assignment maximizes the value of the DAMN Leasehold.

Based on a careful review of the record, the Court finds that the proposal to sell the leasehold to DAMN, LLC does maximize the value of the asset to the partnership. Notably, Mr. Ryan found that: the leasehold had been advertised since 2013 and that the offers by prospective

buyers over that time, not the appraisal value, reflect the true market value of the property; and the remaining offers made for the DAMN Leasehold were inferior to the offer made by DAMN, LLC including Defendants' offer to purchase at $2.9 million, which while arguably of greater value than DAMN, LLC's offer, included terms which rendered the offer untenable. The Court addresses each of these findings in turn.

The appraisal commissioned by the Special Master found that approximately one year of actively marketing the DAMN Leasehold would be sufficient to fix the market value of the asset. Defendants seize on this finding to object to the assignment, arguing that CBRE did not actively market the Leasehold for one year and DAMN, LLC's offer for the assignment is below the appraisal value, so more time is needed in order to ascertain the maximum value of the DAMN Leasehold. This objection does not merit a further stay of the sale.

After the hearing on March 10, 2017, CBRE, at the Court's direction, provided a thorough analysis of the duration and adequacy of the marketing efforts for the DAMN Property and Leasehold. CBRE found that its listings for the DAMN Property have been active on commercial real estate advertising engines "CoStar" and "Loopnet" since October 12, 2016 and October 11, 2016 respectively. CBRE found that advertisements on both websites predating CBRE's involvement were last updated July 14, 2016. CBRE did not identify who placed these advertisements or when they were originally posted. CBRE also found that six organizations made or received offers to sublease the DAMN Leasehold between September 2013 and March 2016. CBRE noted that most of these offers were referenced in the appraisal. Thus, contrary to Defendants' objection, the property has been marketed since 2013 and CBRE was well-positioned to determine the true market value of the property on the basis of the offers for the assets before and after CBRE's advertising. CBRE also found that the offering is "unusually

complicated . . . and is frankly considered 'tainted' by much of the brokerage community" because of the acrimonious relationship between the Partners. Accordingly, CBRE found that no further amount of advertising or marketing would produce a better result than the offer by DAMN, LLC. The Court finds that CBRE's reasons are well founded and the Court rejects Defendants' objection as to the marketing of the Leasehold.

During his testimony on March 10, 2017, Mr. Ryan also discussed the inquiries and offers CBRE received after it began listing the DAMN Property. Mr. Ryan noted that the highest amount offered by any party was Defendants' offer of $2.9 million. This offer was contingent on closing the sale of the D, E, & F parcels at the same time as the DAMN Leasehold. The transaction was also styled as a transfer of partnership interests to the Defendants which, for the reasons discussed above, would require the consent of the other partners under Section 9 of the partnership agreement. Plaintiff advised Mr. Ryan via email that she would not consent to such a transaction. Finally, the offer submitted by the Defendants did not conform to standard contractual terms that CBRE recommends for such transactions. For these reasons, the Special Master determined that the transaction was unlikely to succeed and was not in the best interests of the partnership. Putting that offer aside, CBRE found that no other offers for the DAMN Leasehold were as valuable as that of DAMN, LLC. The Special Master also noted that the DAMN, LLC owned the underlying property and was aware of the environmental issues[5] which could affect future uses of the property. This unique pre-existing relationship to the property increased the likelihood that the transaction would be successfully consummated.

Based on the evidence presented in the March 10, 2017 hearing and the reports of CBRE and the Special Master, the Court finds that the DAMN, LLC offer reflects the maximum value of the DAMN Leasehold and the Court dismisses the Defendants' objection.

---

[5] DAMN, LLC agreed to accept the state of the property "as is" with respect to environmental damage.

### C. Residual Objections

Defendants raise three residual objections to the proposed assignment. First, Defendants contend that CBRE suffered a conflict of interest because it represented the partnership in the marketing of the Leasehold and DAMN, LLC in the marketing of the underlying DAMN Property. Second, the proposed assignment's releases of liability are not authorized by the Defendants, lack mutuality, and do not adequately protect against environmental damages claims brought against the partners even after the unwinding of the partnership. Third, the assignment depends on Michael Jennings' proceeds of the assignment applying as a reduction to the final sale price to DAMN, LLC despite the fact that the other partners' proceeds are being held by the Special Master. The Court finds that none of these objections warrant a stay of the sale.

Defendants are correct that CBRE represented DAMN, LLC and the partnership at the same time but this fact does not warrant a stay of the assignment. Defendants offer no more than conjecture that CBRE's dual representation prevented a maximization of the value of the DAMN Leasehold. *See* Dkt. No. 334, ¶ 2 ("Under such circumstances, it is difficult to see how CBRE could have maximized its efforts to sell that leasehold interest or to have conducted truly arms-length negotiations with DAMN, LLC for its purchase of that leasehold interest."). Mr. Ryan testified that in fact, CBRE's dual representation improved the marketing of the DAMN Leasehold because the Leasehold would have been more difficult to market aggressively without the cooperation of the underlying property owner. Because DAMN, LLC agreed to market the DAMN Property for sale at the same time that the Leasehold was listed, CBRE was able to market the product to parties interested in purchasing the entire property, free and clear of the lease, and those interested in only taking on the lease interest. Mr. Ryan averred that this tactic generated the greatest overall interest in the property. Further, as the Special Master noted in the

March 22, 2017 Report, he has rejected numerous prior offers made by Michael Jennings and DAMN, LLC—including two lower-priced offers for the DAMN Leasehold on the basis of CBRE's advice. This direct evidence that CBRE has negotiated with DAMN, LLC at arm's length over the Leasehold assignment disproves Defendants' unsupported claims of collusion.

There is also no basis for Defendants' objection that the release in the assignment lacks authorization, mutuality, or is inadequate to protect against environmental claims. The Special Master found in the March 22, 2017 Report that the release was within the Special Master's power and jurisdiction to act on behalf of the Assignors "Jennings Family Limited Partnership . . . and parenthetically . . . the partners." Exh. 1, at 3. The Special Master noted that during the execution of his duties he has made determinations as to the rights and obligations of the partners vis-à-vis the partnership. *See* Exh. 1, at 3 ("The scope and jurisdiction created by the partners in the Settlement Agreement had authorized the Special Master's consideration of claims by the defendants against JMC in a hearing last April. The defendants did not, despite filing thorough briefs, then contest that jurisdiction and, indeed, actually relied upon it to seek an award of damages for the Partnership."). The present release is a further exercise of that authority. The Special Master also found that the specific language in Paragraph 9 of the proposed assignment "mutually releases the defendants (among the Assignors)." Exh. 1, at 3. Counsel for DAMN, LLC echoed this view in the hearing on March 10, 2017. Thus, there is no merit to Defendants' objection that the assignment lacks mutuality. Lastly, Mr. Ryan noted in his testimony that the assignment to DAMN, LLC mitigated the environmental risks. DAMN, LLC seeks to continue the auto-related uses on the property which will not require remediation of the past environmental degradation on the property. Accordingly, the risk of third-party suits against the Defendants is overstated and does not afford a basis for staying the proposed assignment.

Finally, Defendants' complaint about the treatment of the proceeds of the DAMN Leasehold assignment does not warrant a stay. Defendants are correct that Michael Jennings' share of the assignment proceeds will be credited as a reduction to the DAMN Leasehold price while the Plaintiff's and Defendants' proceeds will be held pending resolution of the remaining costs and expenses of the partnership. But Defendants' objection to the partial release of funds is undermined by their own argument that the partners should be entitled to a partial disbursement of funds from the D, E, & F sale. Dkt. No. 272. As Defendants' own accounting reveals, there is enough money in the partnership based on the D, E, & F sale to cover the partnership's present and anticipated costs and expenses. Thus, the application of Michael Jennings' proceeds from the DAMN Leasehold assignment to reduce the assignment purchase price will not jeopardize the partnership's ability to pay its costs and expenses and for Michael Jennings to pay his share. The partial distribution is also not inequitable because the Court has authorized a partial distribution of funds to the Defendants based on their request to pay personal expenses. The reasons for the two disbursements are different, but the Court is within its authority to authorize partial distributions for these purposes. Accordingly, Defendants' objection is without merit.

### III. Conclusion

For the foregoing reasons, the Court finds that a sale of the DAMN leasehold to DAMN, LLC maximizes the value of the partnership's assets as set forth in the settlement agreement. Accordingly, Defendants' Motion for Stay Action on the Proposed Assignment of the DAMN Lease is DENIED. Dkt. No. 287. The Court authorizes the Special Master to enter into the assignment agreement with DAMN, LLC as of today's date.

April 7, 2017
Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge